EXHIBIT C

PRESS RELEASE

# Chicago-Area Attorney Charged After SEC Exam Spots Fraud in Real Estate Investment Offering

**FOR IMMEDIATE RELEASE**
**2014-116**

*Washington D.C., June 11, 2014* — The Securities and Exchange Commission today charged the founder of an investment advisory firm located in suburban Chicago with defrauding investors in connection with a real estate venture for which his firm offered securities.

After an SEC examination of Kenilworth Asset Management LLC detected potential misconduct that was referred to the agency's Enforcement Division, the ensuing investigation found that Robert C. Acri misled clients in the offer and sale of promissory notes issued for the redevelopment of a retail shopping center near Hammond, Ind. Despite saying the investments would specifically be used for this project and secured by a security interest in real estate, Acri misappropriated $41,250 of the proceeds for other uses and took no action to ensure that a security interest was recorded. Acri failed to disclose several other material facts to investors, including a primary purpose behind the investment offer – Kenilworth was attempting to rescue money that other Acri clients had previously invested in the developer of the same real estate project. Acri also concealed from investors that Kenilworth was to receive a five percent commission on each sale of notes.

Acri, a licensed attorney who lives in Winnetka, Ill., agreed to settle the SEC's charges by disgorging the misappropriated investor funds and undisclosed commissions plus interest and an additional penalty for a total of approximately $115,000 in monetary sanctions. Acri also agreed to cease and desist from violations of the antifraud provisions of the federal securities laws and to be barred from the securities industry, from participating in penny stock offerings, and from

appearing before the SEC as an attorney on behalf of any entity regulated by the agency. Acri resigned from Kenilworth in August 2012.

"Acri wasn't honest with his clients and hid serious conflicts of interest from them while blatantly disregarding his fiduciary duty as an investment adviser," said Robert J. Burson, senior associate regional director of the SEC's Chicago office.

According to the SEC's order instituting a settled administrative proceeding, Acri controlled Kenilworth's bank accounts, hired employees, and made significant decisions about the firm's policies, practices, and investment offers to clients. In early 2011, Acri decided to raise funds from Kenilworth clients for the Hammond, Ind., project when the project's developer Praedium Development Corporation was unable to obtain financing from banks and other traditional lenders. As part of this effort, Praedium created a new entity Prairie Common Holdings LLC to issue the notes. One of Acri's primary purposes for selling Prairie's notes to Kenilworth clients was to give other Kenilworth clients who had invested in Praedium through a private fund several years earlier a chance to recover their money from that investment. Praedium had previously defaulted on a half-million-dollar loan from the private fund.

The SEC's order finds that Acri purposely failed to disclose significant facts and conflicts of interest when offering the promissory notes to clients, who were not told about the prior loan or that Praedium and an affiliate had been delinquent in the payment of its mortgage, property taxes, and some contractor invoices. In fact, Acri did not even disclose that Praedium was the developer behind the Prairie project or that one of Praedium's owners was having personal financial difficulties and was Acri's personal friend.

According to the SEC's order, Acri misappropriated $41,250 from the client funds that were supposed to be used to develop the Hammond, Ind. Project. Acri instead used that money to repay other clients and former clients, pay an individual to purportedly seek a loan for Praedium, and toward a settlement in a separate lawsuit that had

been brought against him. Acri also did not inform investors about the $13,750 that Kenilworth received in commissions for selling the promissory notes.

The SEC's investigation was conducted by James J. Thibodeau and Sruthi Koneru of the Chicago Regional Office and supervised by James A. Davidson. The examination that led to the investigation was conducted by Teresa A. Tyson, Matthew D. Harris, Gena M. Kusiak, and Erik J. Lillya of the Chicago Regional Office and supervised by Louis A. Gracia.

###

### Related Materials

- SEC order

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES ACT OF 1933
Release No. 9599 / June 11, 2014

SECURITIES EXCHANGE ACT OF 1934
Release No. 72370 / June 11, 2014

INVESTMENT ADVISERS ACT OF 1940
Release No. 3854 / June 11, 2014

INVESTMENT COMPANY ACT OF 1940
Release No. 31077 / June 11, 2014

ADMINISTRATIVE PROCEEDING
File No. 3-15926

| | |
|---|---|
| In the Matter of<br><br>ROBERT C. ACRI<br><br>Respondent. | ORDER INSTITUTING PUBLIC ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS, PURSUANT TO SECTION 8A OF THE SECURITIES ACT OF 1933, SECTIONS 4C, 15(b), AND 21C OF THE SECURITIES EXCHANGE ACT OF 1934, SECTIONS 203(f) AND 203(k) OF THE INVESTMENT ADVISERS ACT OF 1940, SECTION 9(b) OF THE INVESTMENT COMPANY ACT OF 1940, AND RULE 102(e)(1)(iii) OF THE COMMISSION'S RULES OF PRACTICE MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER |

I.

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Section 8A of the Securities Act of 1933 ("Securities Act"), Sections 4C, 15(b), and 21C of the Securities Exchange Act of 1934 ("Exchange Act"), Sections 203(f) and 203(k) of the Investment Advisers Act of 1940 ("Advisers Act"), Section 9(b) of the Investment Company Act of 1940 ("Investment Company Act"), and Rule 102(e)(1)(iii) of the Commission's Rules of Practice against Robert C. Acri ("Acri" or "Respondent").

## II.

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over him and the subject matter of these proceedings, which are admitted, Respondent consents to the entry of this Order Instituting Public Administrative and Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act, Sections 4C, 15(b), and 21C of the Securities Exchange Act of 1934, Sections 203(f) and 203(k) of the Investment Advisers Act of 1940, Section 9(b) of the Investment Company Act of 1940, and Rule 102(e)(1)(iii) of the Commission's Rules of Practice, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order ("Order"), as set forth below.

## III.

On the basis of this Order and Respondent's Offer, the Commission finds[1] that

### Summary

These proceedings arise out of fraud by an investment adviser in connection with the offer and sale of promissory note securities. Between April and September 2011, Acri, as the controlling managing member of Commission-registered investment adviser Kenilworth Asset Management LLC ("Kenilworth"), defrauded Kenilworth's investment advisory clients in the offer and sale of $240,000 in promissory note securities of Prairie Common Holdings LLC ("Prairie"). Acri told clients that their funds would be used in the development of a retail parcel located near Hammond, Indiana, and that their investments would be secured by real estate. Acri, however, misappropriated $41,250 of the total proceeds, and the investments were never secured. Acri also failed to disclose material information to advisory clients concerning: (1) a conflict of interest arising from his motivation to engage in the offering to help other Kenilworth advisory clients recover on a prior, delinquent $500,000 loan to Praedium Development Corporation ("Praedium"), Prairie's developer; (2) the distressed financial condition of the real estate development project of which Prairie was a part, Praedium, and a Praedium principal; and (3) the five percent commission Kenilworth would receive on sales of the securities, which totaled $13,750. Based on these actions, Acri willfully violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Sections 206(1) and 206(2) of the Advisers Act.

---

[1] The findings herein are made pursuant to Respondent's Offer of Settlement and are not binding on any other person or entity in this or any other proceeding.

### Respondent

1.  **Robert C. Acri** is 57 years old and a resident of Winnetka, Illinois. Acri was the founder, co-owner, and manager of Kenilworth Asset Management LLC, an investment adviser registered with the Commission. In July 2012, Acri resigned as a principal and his ownership of Kenilworth was terminated. Acri was also the founder and manager of the KAM Private Fund, LLC, a private pooled investment vehicle not registered with the Commission. From January 2010 through June 2011, Acri was also associated with a broker-dealer registered with the Commission. Acri is also an attorney licensed to practice in Illinois.

### Other Relevant Entities

2.  **Kenilworth Asset Management LLC,** an Illinois limited liability company formed on March 27, 2002, is an investment adviser registered with the Commission since February 25, 2011. Kenilworth's principal place of business is in Kenilworth, Illinois.

3.  **KAM Private Fund, LLC** ("KAM Private Fund"), an Illinois limited liability company formed on November 23, 2004, was a private pooled investment vehicle not registered with the Commission. KAM Private Fund's principal place of business was in Kenilworth, Illinois, and although it was administratively dissolved by the State of Illinois on May 11, 2007, Acri continued to operate it until approximately June 2012.

4.  **Praedium Development Corporation,** an Illinois corporation formed on December 30, 1998, is in the business of real estate development and is not registered with the Commission. Praedium's principal place of business is in Northbrook, Illinois.

5.  **Woodmar Hammond, LLC** ("Woodmar"), an Illinois limited liability company affiliated with Praedium and formed on January 19, 2005, was formed to hold a real estate investment located near Hammond, Indiana, and is not registered with the Commission. Woodmar, whose principal place of business was in Northbrook, Illinois, was involuntarily dissolved on July 12, 2013.

6.  **Prairie Common Holdings LLC,** an Illinois limited liability company affiliated with Praedium and formed on January 27, 2011, was formed to hold a real estate investment located near Hammond, Indiana, and is not registered with the Commission. Prairie's principal place of business is in Northbrook, Illinois.

### Facts

7.  In 2011, Acri controlled Kenilworth, a Commission-registered investment adviser. Acri, as Kenilworth's founder and one of its managing members, controlled its bank accounts, hired its employees, and made significant decisions concerning the investments it offered to its clients and its policies and practices.

8.  In January 2005, Acri, as adviser to the KAM Private Fund in which several Kenilworth clients were or later became investors, invested $500,000 of the fund's assets in a one-year promissory note bearing 15% interest and issued by Praedium, a real estate development company controlled by Acri's friend ("the Praedium principal") and one other person. The purpose

3

of the Praedium note investment was to provide funds to Praedium for use with Woodmar, an entity created by Praedium to redevelop a retail shopping center near Hammond, Indiana.

9. As the Woodmar project struggled to move forward, Praedium failed to make any payments on its $500,000 promissory note issued to the KAM Private Fund. The economic and real estate downturn of 2008-09 further increased Praedium's/Woodmar's financial distress by making it difficult for Praedium/Woodmar to secure leases from prospective tenants and to obtain necessary financing, including the promised tax increment financing (TIF) from the City of Hammond upon which the economic viability of the project depended. As a result, Praedium/Woodmar became delinquent on a mortgage, the payment of its property taxes, and the payment to some of its contractors.

10. As a potential way forward, Praedium developed a plan wherein two smaller parcels would be separated from the Woodmar project and developed so as to create equity in the larger Woodmar project and demonstrate that progress was being made overall. To accomplish this plan, Praedium created two new companies, including Prairie Common Holdings, to own and develop the two smaller parcels.

11. Because Praedium required financing to advance the Prairie project but was unable to obtain it from banks and other traditional lenders, the Praedium principal turned to Acri for assistance in finding investors to supply the necessary funds.

12. In early 2011, Acri decided to raise funds for Prairie from Kenilworth's clients. One of Acri's primary purposes for selling Prairie promissory notes to Kenilworth clients was to give other Kenilworth clients (*i.e.*, those who had invested in the KAM Private Fund) a chance to recover on their earlier investment in Praedium.

13. Acri and the Praedium principal agreed that Kenilworth would receive a five percent commission on the sales of Prairie promissory notes.

14. From approximately April 2011 through September 2011, Acri and a Kenilworth associate offered and sold a total of $240,000 in Prairie promissory notes to six Kenilworth clients. Acri drafted these notes, which bore a 15% annual interest rate and stated maturities of approximately 6 to 8 months.

15. In his offer and sale of the Prairie promissory notes, Acri told Kenilworth clients that their funds would be used in the development of a retail parcel located near Hammond, Indiana.

16. In his offer and sale of the Prairie promissory notes, Acri knowingly failed to tell Kenilworth clients the following material facts:

- Kenilworth clients and others, through the KAM Private Fund, loaned $500,000 to Praedium for the development of Woodmar in 2005;

- the KAM Private Fund had not been paid anything by Praedium on this loan;

4

- that a primary purpose for the selling of the Prairie notes to Kenilworth clients was to give other Kenilworth clients (*i.e.*, those who had invested in the KAM Private Fund) a chance to recover on their earlier investment in Praedium;

- Praedium/Woodmar had been delinquent in the payment of its mortgage, property taxes, and some contractor invoices;

- Praedium was also the developer of the Prairie project;

- the Praedium principal was Acri's personal friend and was also having financial difficulties; and

- Kenilworth would receive a five percent commission on the sale of the Prairie notes.

17. In connection with the offer and sale of the Prairie notes, Acri also did not tell the Kenilworth associate about: the KAM Private Fund's delinquent loan to Praedium; the financial difficulties of Praedium/Woodmar; and that Kenilworth would receive a commission for selling the Prairie notes.

18. Acri misappropriated $41,250 of the Kenilworth clients' funds that were supposed to be used to develop Prairie. Specifically, Acri spent: $28,750 in repayment of other former and current clients and fund investors; $7,500 in partial payment of a settlement of a lawsuit against Acri; and $5,000 to pay a person to purportedly seek a loan for Praedium/Woodmar.

19. Kenilworth received $13,750 in commissions that Acri did not disclose to the Prairie investors. Acri controlled the use of those funds.

20. Acri also told investors that their investments in the Prairie notes would be secured by a security interest in real estate recorded by Praedium/Prairie. Acri took no action to ensure that such a recording occurred.

### Violations

21. As a result of the conduct described above, Acri willfully violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder which prohibit fraudulent conduct in the offer or sale of securities and in connection with the purchase or sale of securities.

22. As a result of the conduct described above, Acri willfully violated Sections 206(1) and 206(2) of the Advisers Act which prohibit fraudulent conduct by an investment adviser.

# IV.

In view of the foregoing, the Commission deems it appropriate, in the public interest to impose the sanctions agreed to in Respondent's Offer.

Accordingly, pursuant to Section 8A of the Securities Act, Sections 4C, 15(b), and 21C of the Exchange Act, Sections 203(f) and 203(k) of the Advisers Act, Section 9(b) of the Investment Company Act, and Rule 102(e)(1)(iii) of the Commission's Rules of Practice, it is hereby ORDERED that:

A. Acri cease and desist from committing or causing any violations and any future violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Sections 206(1) and 206(2) of the Advisers Act.

B. Acri be, and hereby is:

> barred from association with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization;

> prohibited from serving or acting as an employee, officer, director, member of an advisory board, investment adviser or depositor of, or principal underwriter for, a registered investment company or affiliated person of such investment adviser, depositor, or principal underwriter;

> barred from participating in any offering of a penny stock, including: acting as a promoter, finder, consultant, agent or other person who engages in activities with a broker, dealer or issuer for purposes of the issuance or trading in any penny stock, or inducing or attempting to induce the purchase or sale of any penny stock; and

> denied the privilege of appearing or practicing before the Commission as an attorney.

Any reapplication for association with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization by the Respondent will be subject to the applicable laws and regulations governing the reentry process, and reentry may be conditioned upon a number of factors, including, but not limited to, the satisfaction of any or all of the following: (a) any disgorgement ordered against the Respondent, whether or not the Commission has fully or partially waived payment of such disgorgement; (b) any arbitration award related to the conduct that served as the basis for the Commission order; (c) any self-regulatory organization arbitration award to a customer, whether or not related to the conduct that served as the basis for the Commission order; and (d) any restitution order by a self-regulatory organization, whether or not related to the conduct that served as the basis for the Commission order.

C. Acri shall, within 14 days of the entry of this Order, pay disgorgement of $55,000.00, prejudgment interest of $4,478.96, and a civil money penalty in the amount of $55,000.00 to the Securities and Exchange Commission. If timely payment is not made, additional interest shall accrue pursuant to SEC Rule of Practice 600 and/or 31 U.S.C. 3717, as applicable. Payment must be made in one of the following ways:

(1) Acri may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(2) Acri may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Robert C. Acri as the Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to: James A. Davidson, Assistant Regional Director, Division of Enforcement, Securities and Exchange Commission, 175 W. Jackson Blvd., Suite 900, Chicago, IL 60604.

The Commission will hold funds paid in this proceeding pending a decision whether the Commission, in its discretion, will seek to distribute funds or transfer them to the United States Treasury.

The Commission may distribute civil money penalties collected in this proceeding if, in its discretion, the Commission orders the establishment of a Fair Fund pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002 ("Fair Fund distribution"). Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Acri agrees that in any Related Investor Action, he shall not argue that he is entitled to, nor shall he benefit by, offset or reduction of any award of compensatory damages by the amount of any part of Acri's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a

[remainder of this page intentionally left blank]

Penalty Offset, Acri agrees that he shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Acri by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

By the Commission.

Jill M. Peterson
Assistant Secretary